```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EDWIN TORO,

                        Plaintiff,

        - against -

CITY OF NEW YORK, ADMINISTRATION FOR           MEMORANDUM AND ORDER
CHILDREN'S SERVICES, MAYOR MICHAEL             12-CV-4093 (RRM) (RLM)
BLOOMBERG, COMMISSIONER JOHN
MATTINGLY, COMMISSIONER RONALD E.
RICHTER, P.O. "JOHN DOE" #1–50,
TEAMSTERS LOCAL 237, PRESIDENT
GREGORY FLOYD, EMPLOYER "JOHN DOE"
#1-50,

                        Defendants.
------------------------------------------------------------X
```
ROSLYNN R. MAUSKOPF, United States District Judge.

*Pro se* plaintiff Edwin Toro ("Edwin" or "Toro") commenced this action against the City of New York ("City"), the Administration for Children's Services ("ACS"), former Mayor Michael Bloomberg, former ACS Commissioner John Mattingly, and present ACS Commissioner Ronald E. Richter ("the city defendants"), as well as against Teamsters Local 237 and its president, Gregory Floyd ("the union defendants") (collectively, "defendants"), raising a host of claims sounding in civil rights violations and tort. Defendants' unopposed motions for summary judgment (Doc. Nos. 57, 66) are currently before the Court.[1] For the reasons set forth below, defendants' motions are granted and the complaint is dismissed.

---

[1] On April 7, 2014, the city defendants furnished Toro by mail with a Local Civil Rule 56.2 Statement, which provided Toro with the requisite notice that his failure to oppose defendants' motion could result in the grant of summary judgment against him and the dismissal of his case. (*See* Doc. Nos. 54 (Decl. of Serv. by Mail), 59 (Rule 56.2 Statement).) That same day, the union defendants separately served Toro by mail with a Local Civil Rule 56.2 Statement. (*See* Doc. Nos. 66-5 (Decl. of Serv. by Mail), 66-1 (Rule 56.2 Statement).) Despite being served with these two notices, Toro did not file any response to defendants' motions for summary judgment.

## BACKGROUND[2]

This action stems from an investigation triggered by a routine traffic stop in Weehawken, New Jersey. On the night of February 4, 2010, the police pulled over plaintiff Edwin Toro's nephew, Eliot Ocasio ("Ocasio"), for speeding. Although Ocasio had previously served as an ACS police officer, he nonetheless identified himself as an active ACS officer, presenting an ACS police badge along with a document appearing to be a copy of an ACS identification card. Ocasio's brother, Brian Toro ("Brian"), who was actually an active ACS police officer at the time, soon appeared on the scene. Less than an hour later, Edwin Toro, who was also an active ACS police officer, phoned his supervisor to state that, in fact, *he* (Edwin) was the one who had been pulled over in New Jersey and had presented his ACS badge and identification, and that Ocasio – his nephew – was merely a passenger in the car. For his part, Brian called his own supervisor and gave a differing account of what had happened.[3]

New York law requires that ACS officers reside in the state; Edwin and Brian purported to live together in an apartment unit at 153 Marcus Garvey Boulevard in Brooklyn, which was in a residential building owned by the New York City Housing Authority ("NYCHA"). In light of how quickly Brian had responded to the traffic stop in New Jersey, the director of ACS Employment Services, Brandon Stradford ("Stradford"), began to investigate whether Edwin and

---

[2] The following material facts are taken from defendants' Local Rule 56.1 statement, as well as the affidavits and exhibits submitted in connection with defendants' motions for summary judgment. *See* Local Rule 56.1(d); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). As previously noted, Toro did not file any opposition or response to the defense motions, notwithstanding that defendants served Toro with the requisite notice to a *pro se* litigant under Local Rule 56.2.

[3] On March 4, 2010, an ACS investigator interviewed Edwin, who denied ever calling his supervisor on the night in question. Disciplinary charges were subsequently instituted against Edwin in 2010, and an administrative hearing was eventually held on June 28, 2011. Administrative Law Judge ("ALJ") Faye Lewis issued a report and recommendation on June 11, 2012 and found that Edwin had lied to the investigator: that Edwin did call his supervisor on the night at issue, and did claim that it was he (and not his nephew) who had been pulled over and showed his ACS badge. Because ACS had already terminated Edwin by then, ALJ Lewis did not make a penalty recommendation as to Edwin, but reserved ACS's right to request that a penalty recommendation be issued if Edwin was ever restored to his position.

Brian actually resided in Brooklyn. To that end, Randy Slovin ("Slovin"), an ACS attorney in the Employment Law Unit, requested information from the NYCHA regarding the purported residence of Edwin and Brian. The manager of the apartment building notified Slovin that Edwin's mother, Miriam Toro, was the sole resident of the apartment unit in question; neither Edwin nor Brian appeared to live there. The Inspector General's Office also performed a "housing canvass" and reached the same conclusion. Furthermore, Slovin submitted a request to the NYCHA Freedom of Information Law Office; based on a records search, neither Edwin nor Brian appeared to live at the address they claimed, nor were they even NYCHA program participants.

By letter dated March 28, 2012, Stradford ordered Edwin to appear at an ACS office on March 30th for a residency interview. Stradford stated that Edwin should bring copies of his apartment lease and income tax forms, and that his failure to comply would result in the termination of his employment. Edwin attended the March 30th interview (with an attorney who appeared telephonically), but failed to provide any of the requested materials. A second interview was scheduled for April 2nd, and Stradford once again advised Edwin in writing to bring the proof-of-residency materials. At the April 2nd interview, Edwin did not produce a copy of his lease and admitted that, in fact, the apartment in question was his mother's residence. On May 18, 2012, ACS terminated Edwin due to his failure to comply with its residency requirement pursuant to New York Public Officers Law § 30(1)(d).

Three months later, on August 15, 2012, plaintiff Edwin Toro filed this *pro se* complaint. Toro alleges that during his time at ACS, he witnessed a host of corrupt behavior and practices by ACS employees, such as ACS supervisors requiring officers to perform illegal searches and arrests, and then punishing officers who failed to comply by, for example, depriving them of

overtime pay. (Comp. (Doc. No. 1) at 5, 7–8 (ECF pag.).) He further alleges that ACS officers committed "abuses" against "minority children" in their custody, as well as against the mothers of such children. (*Id.* at 5–7.) In his complaint, Toro claimed to have reported some of these corrupt and illegal activities to his superiors at ACS. (*Id.* at 7.) Additionally, Toro was deposed during this lawsuit and testified that, in 2010, he complained to the New York City Department of Investigation ("DOI") about some of this misconduct. He also claimed to have made surreptitious recordings of certain misconduct, indicated that he had paperwork memorializing his whistleblowing to ACS supervisors, and even maintained that he wrote letters to the "media" about these matters. (Toro Dep. (Doc. No. 60-2).) On November 14, 2013, Magistrate Judge Roanne L. Mann ordered Toro to turn over all of that alleged evidence to defendants. (Doc. No. 46.) Toro failed to comply with that Order and has never provided any such evidence.

The gravamen of Toro's lawsuit is that ACS, in turn, retaliated against him for disclosing such improprieties by initiating disciplinary charges against him in 2010 concerning the speeding incident with his nephew, attempting to break into his car in 2010, terminating his employment in 2012 for violating ACS's residency requirements, and withholding leave pay following his termination. (Doc. No. 1 at 8–10.) Edwin alleges a slew of claims against the city defendants sounding in the following: civil rights violations under New York State Civil Rights Law § 40-c, the New York State Constitution, and 42 U.S.C. § 1983, stemming from his supposed "false arrest" and "malicious prosecution" (addressed below), as well as relating to his termination from ACS; intentional infliction of emotional distress, abuse of process, and negligent supervision concerning his supposed false arrest and malicious prosecution; conspiracy with racial animus; and "gang stalking." Edwin also claims, in a conclusory fashion, that he was subjected to discrimination on the basis of his ethnicity. As to the union defendants, who

provided legal representation to Toro during the disciplinary proceedings at issue in this case, Edwin asserts causes of action for violation of the union's fair duty of representation and fraud. (*Id.* at 10–22.)

As noted, Edwin was deposed as part of this lawsuit. Notwithstanding his claims of false arrest and malicious prosecution, Edwin testified at the deposition that he has never been arrested since working for ACS, nor has he ever been subject to criminal court proceedings. (Doc. No. 60-2 at 145–46.) Edwin further acknowledged that he did not file a notice of claim with respect to any of his causes of action against the city defendants. (*Id.* at 146–47.)

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits in the record demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence of the non-movant is to be believed and the Court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970)). Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

In this case, Toro, who is proceeding *pro se*, did not respond in any fashion to defendants' motions for summary judgment. "Special solicitude" should be afforded *pro se* litigants, like Toro, when confronted with motions for summary judgment. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Nevertheless, a *pro se* plaintiff is not otherwise relieved from the usual requirements of summary judgment. It is thus settled law that a *pro se* plaintiff, just like a represented one, may not rely solely on his complaint to defeat a summary judgment motion. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996). If a *pro se* plaintiff fails to oppose a motion for summary judgment, the Court may grant the motion if: (1) the pro se plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the Court is satisfied that "the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 486 (quoting Fed. R. Civ. P. 56(c)).

Here, the city and union defendants complied with Local Civil Rule 56.2 Statements, and supplied Toro with the requisite notice that failure to oppose defendants' motions could result in the grant of summary judgment against him and the dismissal of his case. In light of Toro having been accorded sufficient notice and yet having failed to respond to the defense motions, the Court accepts as true the facts set forth in those motion papers and in defendants' Rule 56.1 Statement. *See LeSane v. Hall's Security Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir. 2001). The Court thus turns to the question of whether those facts establish that defendants are entitled to summary judgment as a matter of law. The Court finds in the affirmative.

## II. Analysis

### A. Claims Against ACS, ACS Commissioners, and Mayor Bloomberg

Toro has sued ACS and its current and former Commissioners Ronald E. Richter and John Mattingly, respectively. But Toro's lawsuit against these parties must be dismissed because ACS is not a suable entity, and an action against the Commissioner of ACS is deemed to be an action against ACS. *See* N.Y.C. Admin. Code & Charter Ch. 16 § 396; *see also Worrell v. City of New York*, 12-CV-6151 (MKB), 2014 WL 1224257, at *3 (E.D.N.Y. Mar. 24, 2014); *Allen v. Mattingly*, No. 10-CV-0667 (SJF), 2011 WL 1261103, at *14 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 478 F. App'x 712 (2d Cir. 2012); *Johnson v. New York*, No. 04-CV-1070 (DLI), 2007 WL 764514, at *5 (E.D.N.Y. Mar. 9, 2007) ("[T]he action filed against ACS must be dismissed since the agency lacks the power to sue or be sued."), *aff'd*, 283 F. App'x 877 (2d Cir. 2008).

Additionally, Toro has not shown that former Mayor Bloomberg adopted any municipal policy, custom, or practice that caused the deprivation of his rights, or that Bloomberg was otherwise personally involved in any of the conduct that Toro alleges. Toro's claim against Bloomberg, and any putative *Monell* claim, are therefore dismissed. *See, e.g.*, *Posr v. City of New York*, 10-CV-2551 (RPP), 2013 WL 2419142, at *11 (S.D.N.Y. June 4, 2013).

### B. False Arrest and Malicious Prosecution

As noted above, Toro specifically admitted during his deposition that, since becoming an ACS police officer, he was neither arrested nor prosecuted in any fashion. Toro's causes of action for false arrest and malicious prosecution, as well as any ancillary tortious causes of action predicated on those claims, are therefore necessarily unfounded. Accordingly, the Court dismisses all such claims.

### C. "Gang Stalking," Conspiracy with Racial Animus, and Racial Discrimination

Toro alleges that defendants engaged in "gang stalking" against him, subjected him to a conspiracy with racial animus, and discriminated against him based on his Hispanic ethnicity. Gang stalking, however, is not a recognized cause of action, and thus his claim to that effect is dismissed. Moreover, Toro's racially-based claims are supported by nothing more than his own conclusory – and, at times, incoherent – allegations in his complaint. Such causes of action, therefore, cannot withstand summary judgment. *See Fitzgerald v. Henderson*, 251 F.3d 345, 360–61 (2d Cir. 2001) ("In general, a party opposing a properly supported motion for summary judgment is not entitled to rely solely on the allegations of her pleading, but must show that there is admissible evidence sufficient to support a finding in her favor on the issue that is the basis for the motion."); *Champion*, 76 F.3d at 485–86.

### D. Violation of Due Process

Toro claims that ACS violated his right to due process by terminating him without first conducting a pre-termination hearing. But a termination pursuant to New York State Public Officers Law § 30(1)(d) – a violation of which was the basis upon which Toro lost his job – does not require a pre-termination hearing to satisfy due process. *See Schirmer v. Town of Harrison*, No. 98-CV-2582 (AGS), 1999 WL 61843, at *5 (S.D.N.Y. Feb. 10, 1999) (citing *Greene v. McGuire,* 683 F. 2d 32, 32–34 (2d. Cir. 1982)). A pre-termination hearing was therefore not required in this situation, and Toro's claim to that effect is dismissed.

### E. Failure to File Notice of Claim

Many of Toro's causes of action are also procedurally defective based on his failure to file any notices of claim against the city defendants. "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793

(2d Cir. 1999); *DiRuzza v. Village of Mamaroneck*, N.Y., 14-CV-1776 (VB), 2014 WL 6670101, at *2 (S.D.N.Y. Oct. 6, 2014). New York law, in turn, "requires that plaintiffs asserting a tort claim against a municipality file a notice of claim within ninety days after the claim arises." *Lopez v. City of New York*, 14-CV-1660 (PKC), 2014 WL 5090041, at *1 (S.D.N.Y. Oct. 10, 2014) (citing N.Y. Gen. Mun. Law §§ 50-e(l)(a), 50-i(l)). This requirement extends to a claim against the employee of a municipality. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 396 (S.D.N.Y. 2013). Furthermore, a party alleging a violation of New York State Civil Rights Law Section 40-c must file a notice of claim with the New York State Attorney General "at or before commencement of the action." *See Ockimey v. Town of Hempstead*, No. 05-CV-3872 (ENV), 2009 WL 1941915, at *17–18 (E.D.N.Y. July 6, 2009) (citing, *inter alia*, N.Y. Civil Rights Law § 40-d and *Chun Suk Bak v. Flynn Meyer Sunnyside, Inc.*, 285 A.D.2d 523 (App. Div. 2d Dep't 2001)).

Toro alleges that defendants discriminated against him in violation of the New York State Civil Rights Law and federal law, as well as committed an array of torts against him in contravention of his civil rights. However, Toro admitted during his deposition that he did not file a notice of claim in connection with *any* such causes of action. Insofar as Toro is purporting to sue the city or any of its employees based on the theories noted above – that is, civil rights violations, torts, and discrimination under state and federal law – such claims are defective on this additional ground.

### F. Retaliation

The gravamen of Toro's allegations against the city defendants involve relation by ACS ostensibly for disclosing widespread corruption within ACS. At bottom, then, Toro's complaint

9

alleges a First Amendment retaliation claim – that is, ACS improperly retaliated against him for engaging in a constitutionally-protected activity.

To the extent this is the thrust of Toro's cause of action, it does not survive summary judgment. In the first place, while Toro devotes much of his complaint to describing the supposed corruption that he witnessed among ACS officers, there is no evidence – beyond the allegations in his complaint and his own unsupported deposition testimony – that he actually reported such misconduct to the authorities. In other words, there is a shortage of proof that Toro engaged in any potentially protected form of activity or speech. As the city defendants emphasize, (Doc. No. 65 at 5–6), Toro claimed at his deposition to have paperwork memorializing certain disclosures. Notwithstanding that testimony – and despite Magistrate Judge Mann's Order, dated November 14, 2013, specifically directing Toro to disclose such evidence, (Doc. No. 46) – Toro has never done so. What is more, while Toro testified that he lodged complaints in 2010 with the DOI, the city defendants have provided documentary evidence that the DOI, in fact, has no records of any such complaints. (*See* Siller Decl. (Doc. No. 64).)

Although the Court is constrained from resolving issues of credibility on summary judgment, Toro's self-serving allegations in his lone deposition are insufficient, under the circumstances of this case, to create a genuine dispute of fact as to whether he reported any alleged misconduct to the authorities and to withstand summary judgment. *See Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) ("[T]he only 'evidence' cited in plaintiffs' brief is their own self-serving testimony . . . Such evidence is insufficient to defeat summary judgment.'") (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)); *Lozada v. Delta Airlines, Inc.*, No. 13-CV-7388 (JPO), 2014 WL 2738529, at *5 (S.D.N.Y. June 17, 2014)

("Although the Court cannot resolve issues of credibility on summary judgment, Lozada's self-serving, incomplete, and inconsistent recollection is not sufficient to create a genuine dispute of fact in light of Delta's documented evidence."); *see also Deebs v. Alston Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (stating that self-serving deposition testimony, by itself, was "insufficient to defeat summary judgment").

In any case, even accepting Toro's allegations at face value, he does not state a viable cause of action for First Amendment retaliation. To survive summary judgment on this kind of claim, a plaintiff must demonstrate that the speech at issue was protected, that he suffered an adverse employment action, and that there was a causal connection between the protected speech and the adverse employment action. *See, e.g.*, *Cotarelo v. Village of Sleepy Hollow Police Department,* 460 F.3d 247, 251 (2d Cir. 2006) (quoting *Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir. 2000)). The evidence gleaned from Toro's deposition is insufficient to satisfy these factors.

First of all, when a public employee makes a statement pursuant to his official duties, the employee is *not* speaking as a citizen for First Amendment purposes, and the Constitution does not insulate his communications from employer discipline. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Complaints of corruption or misconduct made by law enforcement personnel, consequently, are generally not protected by the First Amendment. *See Carter v. Inc. Vill. Of Ocean Beach*, 415 F. App'x 290, 292–93 (2d Cir. 2011); *Matthews v. City of New York*, 957 F. Supp. 2d 442, 459–66 (S.D.N.Y. 2013). Here, the ACS Patrol Guide states that "[a]ll officers have an absolute duty to report any corruption or serious misconduct of which they become aware." (Doc. No. 60-4 at 16 (ECF pag.).) Accordingly, any such disclosures by Toro were

11

necessarily performed pursuant to his official duties as an ACS officer, rendering them outside the scope of constitutional protection.

But even if Toro's alleged speech was constitutionally protected, he would still need to establish that he was subjected to an "adverse employment action," which is "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," *Washington v. County of Rockland,* 373 F.3d 310, 320 (2d Cir. 2004), as well as a "causal connection" between such speech and the adverse employment action. *See, e.g.*, *Pekowsky v. Yonkers Bd. of Educ.*, 23 F. Supp. 3d 269, 280 (S.D.N.Y. 2014) (stating that, to establish a causal connection between a protected activity and an adverse action, a plaintiff must show that the activity was "at least a substantial or motivating factor in the adverse employment action") (quoting *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 130 (2d Cir. 2013)). No such evidence exists in this case.

First, notwithstanding Toro's allegation that some person or persons sought to break into his car in 2010, he has not provided proof that any ACS employee was responsible for, or at all complicit in, this incident – which Toro did not even report to the police. Without any evidence that ACS somehow played a role in that occurrence, this cannot constitute an adverse "employment" action. Moreover, Toro has not viably demonstrated a causal connection between any supposedly protected speech and (1) the initiation of disciplinary charges against him in 2010 relating to his nephew's speeding incident, or (2) the termination of his employment in 2012 due to his violation of ACS's residency requirements. As to his termination, Toro has presented no direct evidence of retaliatory animus, and because ACS did not dismiss Toro until May 2012 – while the "speech" at issue putatively occurred sometime in 2010 – causation cannot be inferred from the temporal sequence of these events. *See El Sayed v. Hilton Hotels Corp.*,

627 F.3d 931, 933 (2d Cir. 2010) (noting that causation cannot be inferred "if the allegedly retaliatory [actions] took place at a temporal remove from the protected activity"); *Anand v. New York State Dep't of Taxation and Finance*, No. 10-CV-5142 (SJF), 2013 WL 3874425, at *9 (E.D.N.Y. July 25, 2013) ("Here, even allowing six months as the outside marker, all but the events in January and March of 2008 fall outside the temporal proximity parameters, and those events do not rise to the level of adverse employment actions in a retaliation context."). Turning to the speeding incident, there is a similar paucity of retaliatory animus, as well as an absence of proof of specifically when Toro allegedly made the disclosures. On this record, no causal connection between these events can reasonably be drawn.

The lack of a causal connection is buttressed by the fact that, by all accounts, ACS's initiation of disciplinary charges against Toro for the speeding incident, and ACS's eventual firing of Toro for the residency violation, were supported by legitimate evidence of misconduct on Toro's part. To that end, a plaintiff may not rely solely on conclusory assertions of retaliatory motive to satisfy the causal link; that is to say, a plaintiff must provide "some tangible proof to demonstrate that [his] version of what occurred was not imaginary." *Cobb v. Pozzi,* 363 F.3d 89, 108 (2d Cir. 2004). Toro has failed to supply such proof, and the evidence put forward by the city defendants meaningfully supports the conclusion that ACS's actions were completely unrelated to Toro's alleged whistleblowing, done in good faith, and well-warranted. As borne out by proof elicited at an administrative hearing, Toro lied to his superior about having been pulled over for speeding (apparently to protect his nephew from having been caught impersonating a law enforcement officer), and then lied again during the course of an investigation into that incident. And, the city defendants have provided extensive evidence that ACS fired Toro only after concluding, based on a thorough investigation, that he had in fact

13

violated ACS's residency requirements – and notwithstanding ACS having accorded Toro multiple opportunities to prove otherwise. No proof of causation exists beyond Toro's own conclusory allegations that he was subjected to retaliatory treatment, which is inadequate to withstand summary judgment.[4]

In brief, there is insufficient evidence to create a material issue of fact as to whether Toro reported alleged misconduct at ACS to the authorities. Alternatively, such whistleblowing was not protected by the First Amendment, and there is no proof of a causal connection between such activity and any supposedly retaliatory conduct.

### G. Union's Failure to Represent

Toro also sues the union defendants for supposedly violating their duty of fair representation and for defrauding him. Section 209-a(2)(c) of the New York Civil Service Law states that "[i]t shall be an improper practice for an employee organization or its agents deliberately to breach its duty of fair representation." N.Y. Civ. Serv. Law § 209-a(2)(c). "[I]n order to establish a claim for breach of the duty of fair representation in violation of New York State Civil Service Law § 209-a(2), it is necessary to show that the union's conduct was arbitrary, discriminatory, or in bad faith." *Matter of Civil Serv. Bar Assn., Local 237, Intl. Bhd. of Teamsters v. City of New York*, 64 N.Y.2d 188, 196 (1984). Moreover, a plaintiff must produce "substantial evidence" that the union deliberately acted to harm him. *See Calkins v. Police Benev. Ass'n of New York State Troopers, Inc.*, 55 A.D.3d 1328, 1329 (App. Div. 4th Dep't 2008) (stating that a plaintiff opposing summary judgment must produce "substantial

---

[4] Toro additionally claims that the city defendants withheld certain payments from him upon his termination. Insofar as that allegation could reasonably qualify as retaliatory conduct, defendants have presented affirmative evidence that ACS made efforts to pay him his remaining leave balance by mail, but that the mailing was returned as undeliverable. (*See* Monge Decl. (Doc. No. 63).)

14

evidence of fraud, deceitful action, or dishonest conduct, or evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives").

In the case at hand, Toro has fallen short of establishing that the union did anything wrong at all, much less violated its duty of fair representation. Notably, Toro admitted during his deposition that the union had provided him with an attorney for the disciplinary proceedings implicated in this lawsuit, and the union defendants have presented affirmative evidence to that effect. (*See* Rubinstein Decl. (Doc. No. 66-4) at 3–4 (ECF pag.).) The union also offered to provide Toro with representation in an Article 78 proceeding following his termination from ACS, which he declined. (*See id.*; Toro Dep. (Doc. No. 60-2) at 165–66.) Toro's own testimony, coupled with evidence presented by the union defendants, thus belies the allegations in the complaint that the union abdicated its duty of fair representation. Inasmuch as Toro also presses a claim for fraud against the union, that cause of action is subsumed under his duty-of-fair representation argument, as the two are functionally indistinguishable. *See Clissuras v. City of New York*, 131 A.D.2d 717, 718 (App. Div. 2d Dep't 1987). As such, Toro's causes of action against the union defendants are dismissed.

## CONCLUSION

In summary, there are no genuine issues of material fact in dispute, and the Court finds that defendants are entitled to judgment as a matter of law. Therefore, defendants' motions for summary judgment, (Doc. Nos. 57, 66), are hereby granted and the complaint is dismissed.

The Clerk of the Court is directed to mail a copy of this Memorandum and Order and the accompanying Judgment to *pro se* plaintiff Edwin Toro, and to close the case.

SO ORDERED.

*/s/ Roslynn R. Mauskopf*

Dated: Brooklyn, New York
March 6, 2015

_____
ROSLYNN R. MAUSKOPF
United States District Judge